UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| TONY REED, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:23-CV-127-REW |
| | ) | |
| v. | ) | |
| | ) | |
| DR. PARSONS, *et al.*, | ) | OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

Federal inmate Tony Reed initiated a *pro se* civil rights action alleging that prison medical professionals are denying him certain mental health-related prescription medications and individual mental health counseling. *See* DE 1 (Petition); 7 (Complaint). Defendants moved to dismiss Reed's claims or, in the alternative, have the Court grant summary judgment in their favor. *See* DE 25 (Motion) 25-1 (Memorandum in Support). As grounds, Defendants argue that Reed failed to exhaust his administrative remedies and that his claims are untimely. Reed responded in opposition, *see* DE 31, and Defendants replied, *see* DE 32. Reed then, without leave, filed a sur-reply.[1] Because there are outstanding questions of fact regarding whether the prison's grievance process was functionally available to Reed and whether his claims are indeed time barred, the Court **DENIES** DE 25.

---

[1] Reed did not seek leave to file a sur-reply and "[n]either the Federal Rules of Civil Procedure nor the Court's local rules permit the filing of sur-replies." *N. Harris Comp. Corp. v. DSI Invs., LLC*, 608 F. Supp. 3d 511, 531 (W.D. Ky. 2022). However, given Reed's *pro se* status, the Court considers the filing. *See Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006) (explaining that the court is "to construe filings by *pro se* litigants liberally."); *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) ("[C]ases should be tried on their merits rather than the technicalities of pleadings.").

1

I.

Since December of 2020, Reed has been incarcerated at the United States Penitentiary ("USP") McCreary in Pine Knot, Kentucky. *See* DE 7 at 2. In June 2023, Reed initiated this action by mailing an unsigned, handwritten letter to the United States District Court for the Northern District of Georgia, the federal district where he was originally convicted and sentenced. *See* DE 1; *see also United States v. Tony Adolphis Reed*, No. 1:18-CR-017-AT-AJB-1 (N.D. Ga. 2018). In the letter, Reed explained that he was incarcerated at USP McCreary and, in his own words, said:

> I'm diagnosed with bipolar and paranoid schizophrenic and they are not giveing [sic] me any medication to help me period. On the streets I take Zyprexa and Prozac for my mental disability . . . . These people are not giving me any medication at all, I have lost my mother and it's stressing me out, they keep us locked down for 3 weeks at a time, . . . I really need your help and support please. These people tell me that I wasn't diagnosed in they [sic] facility for mental health, therefore they can't give me medication.

DE 1 at 1. According to Reed, he received mental health medications at each of the prisons where he was previously incarcerated. *See id.* at 1-2. Reed also claimed that he "came to USP McCreary and for the first 3 days they gave [him] mental health medication and just stopped giveing [sic] it to [him]." *Id.* at 2. Finally, Reed stated that he sought the help of his sister and of his previous criminal defense attorney but was unable to obtain the medications in question. *Id.*

The Northern District of Georgia construed Reed's letter as a *pro se* civil rights complaint pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* DE 2 at 1. The court thus transferred Reed's case to the Eastern District of Kentucky, the district in which USP McCreary is located. *See id.* at 2; *see also* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]").

2

At this Court's direction, Reed then completed, signed, and filed the E.D. Ky. 520 Civil Rights Complaint Form, which became his operative pleading. *See* DE 6 (Order); 7. Reed's Complaint names multiple defendants, including "Dr. Parsons" (who Reed says is the head of psychology at USP McCreary) and "Dr. R. Jones" (who Reed says is the prison's health service administrator).[2] DE 7 at 1-2. Reed claims that Defendants are violating his "rights under the Eighth Amendment of the U.S. Constitution by inflicting upon me cruel and unusual punishment." *Id.* at 4. Among other things, Reed claims that:

> Prior to my arrival at U.S.P. McCreary (Dec. 3, 2020), I had been prescribed Zyprexa and Prozac only to be taken off the prescribed meds three days after my arrival at the orders of Dr. Parsons and Dr. Jones for no apparent reason and given different meds that had nothing to do with the treatment of my mental health issues.

*Id.* at 2. Reed also alleges that he is "still being denied my mental health meds" and that Dr. Parsons is denying him "individual mental health counseling." *Id.* For relief, Reed says, among other things, that he wants "to be placed back on [his] prescribed mental health meds" and to receive "individual mental health counseling." *Id.* at 8. Reed later amended his Complaint and added a request for $250,000 in damages. *See* DE 11 (Motion for Leave); 15 at 2 (Order Granting Leave).

In the Complaint, Reed also suggests that he tried to pursue his administrative remedies with the Federal Bureau of Prisons as he "requested a BP-8 [form] from the counselor (Mr. Kieth).[3]" *Id.* at 5. However, Reed alleges that the counselor refused to give him the form and "threatened to retaliate if [Reed] wrote staff up." *Id.*

---

[2] The Complaint also named , a "Unit Team" (consisting of a unit manager, case manager, and counselor) and USP McCreary itself. *See* DE 7 at 1-2. The Court previously dismissed all claims against these Defendants. *See* DE 15.

[3] Prison records later filed by Defendants suggest that the proper spelling of the counselor's last name is "Keith." *See* DE 25-2 at 11.

The Court screened Reed's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2). *See* DE 15.  While the Court dismissed some of Reed's claims, it allowed him to proceed with his claims against defendants Parsons and Jones concerning the alleged denial of prescription medication and counseling.  *See id.*

Defendants then filed a motion to dismiss or, in the alternative, for summary judgment. DE 25.  Reed responded in opposition, *see* DE 31, and Defendants replied, *see* DE 32.  Reed filed a sur-reply.  *See* DE 33.  The matter is fully briefed and ripe for ruling.

II.

As an initial matter, the Court will treat the motion as one seeking summary judgment.  The motion attaches and relies on a declaration and other documentary evidence extrinsic to the pleadings and references the Rule 56 rubric.  *See* DE 25-1 at 5-6, 10-11.  This, combined with the fact that Defendants sought summary judgment in the alternative, supports that Defendants had sufficient notice that their motion might be treated as a motion for summary judgment.  *See* FED. R. CIV. P. 12(d) (stating that if, in a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1106 (6th Cir. 2010) (finding no abuse of discretion where district court determined the defendant had sufficient notice that its motion to dismiss might be converted into a motion for summary judgment because the defendant relied on documents outside of the pleadings).

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party.  *See*

4

*Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the Court may not "weigh evidence [or] determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *Id*. "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Id*. at 2552. A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. An issue is "genuine" is "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

### A.  *Exhaustion of Administrative Remedies*

First, Defendants argue that Reed failed to exhaust his administrative remedies before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). *See* DE 25-1 at 3-6. In support, they attach a declaration from a BOP employee and prison records suggesting that Reed failed to follow the multi-tiered administrative grievance process regarding the matters at hand. *See* DE 25-2 at 1-2, 8-9. While Defendants acknowledge that "Reed claims his attempts to exhaust

5

were frustrated as his counselor, Mr. Keith, would not provide him with the needed remedy forms[,]" they introduce evidence that Reed was assigned to a different counselor from February 16, 2022, through July 7, 2022 and argue that Reed could have exhausted his administrative remedies during that time. *Id.* at 5-6 (citing DE 25-2 at 2, 10-11).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory. *See Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). Notwithstanding this requirement, failure to exhaust is an affirmative defense that the defendants must plead and prove by a preponderance. *See Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022). Here, under the rubric that applies, Defendants have not met their burden.

Defendants submitted evidence indicating that Reed did not complete the standard step-by-step administrative grievance process regarding the issues he now raises in this matter. *See* DE 25-2 at 1-2, 8-9. Reed appears to acknowledge this fact in his Complaint, *see* DE 7 at 1, and he does not dispute it in his response to Defendants' motion, *see* DE 31 at 1-2. Reed, however, has indicated that a prison official impeded his ability to exhaust his claims and, therefore, made the usual grievance system unavailable to him. *See* DE 7 at 5; 31 at 1-2; *see also Gilmore v. Ormond*, No. 19-5237, 2019 WL 8222518, at *2 (6th Cir. Oct. 4, 2019) (indicating it is improper to grant summary judgment under such circumstances). For example, in his Complaint, Reed states that he requested a BP-8 Form from his counselor in an apparent attempt to begin the administrative exhaustion process. *See* DE 7 at 5. Reed, however, alleges that the counselor refused to provide him with that form and "threatened to retaliate if [Reed] wrote staff up." *Id.*

6

The Sixth Circuit has indicated that an inmate must make an affirmative, sufficient effort to comply with relevant exhaustion procedures, and then a court will analyze whether the facility rendered those remedies unavailable. *See Lamb*, 52 F.4th at 293. The Sixth Circuit has also explained "that administrative remedies are not 'available' if prison employees refuse to provide inmates with necessary grievance forms when requested," *id.* at 297, or "if 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Gilmore*, 2019 WL 8222518, at *2 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016)). Here, Reed's assertions create contested factual issues regarding whether he sufficiently tried to exhaust his administrative remedies and whether a prison official nevertheless made the grievance process functionally unavailable to him by refusing to provide him with a necessary form and subsequently threatening him.

The Sixth Circuit has held "that 'if the plaintiff contends that he was prevented from exhausting his remedies,' the defendant must 'present evidence showing that the plaintiff's ability to exhaust was not hindered.'" *Lamb*, 52 F.4th at 295 (quoting *Surles v. Andison*, 678 F.3d 452, 457 n.10 (6th Cir. 2012)). In an apparent attempt to meet this burden, Defendants argue that "Reed had the opportunity to exhaust from February 16, 2022, through July 7, 2022, when he was assigned to a different counselor." DE 25-1 at 5-6 (citing DE 25-2 at 2, 10-11, including prison records regarding Reed's housing and counselor assignments). This evidence, however, does not sufficiently demonstrate that Reed could then have exhausted his administrative remedies. After all, Reed alleged that Mr. Keith "threatened to retaliate if [he] wrote staff up." DE 7 at 5. It is not obvious that the alleged threat would have only been carried out while Mr. Keith was serving as Reed's counselor. In other words, it is not clear that Reed could have pursued his administrative remedies without fear of retaliation as soon as he was under the supervision of a different

counselor. The question is whether a prison official "took an adverse action that would deter a person of ordinary firmness from continuing with the grievance process." *Does 8-10 v. Snyder*, 945 F.3d 951, 966 (6th Cir. 2019) (internal quotation marks omitted) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)). Answering this question requires considering the precise nature and timing of Mr. Keith's alleged "threat[ ] to retaliate" against Reed if he "wrote staff up." DE 7 at 5. These questions of fact are currently unresolved but can be explored and perhaps illuminated further through discovery. *See Lamb*, 52 F.4th at 298 (recognizing that the discovery process and a more substantial factual record can reveal whether a grievance process was fully available to the plaintiff). Thus, at this time, summary judgment is not appropriate.

### B. Statute of Limitations

Defendants also argue that Reed's claims are barred by the applicable one-year statute of limitations. *See* DE 25-1 at 6-9. Specifically, Defendants assert that "Reed's *Bivens*-type claims would have accrued in December 2020, when the medication [at issue] was allegedly ordered to be stopped. Reed knew (or should have known) of his alleged injury on or about December 6, 2020, and the statute of limitations would have begun at that time." *Id.* at 8. Defendants thus argue that Reed had to bring his claims on or before December 6, 2021. *See id.* at 6, 9. Reed did not initiate this civil action until June of 2023. In response, Reed argues that he "complained to staff members about the denial of his mental health medication" "between December 2020 and 2022[.]" DE 31 at 4.

At this stage, summary judgment is not appropriate. Defendants' narrow reading of the Complaint overlooks Reed's contention that he continued to request certain mental health-related medications after December of 2020, albeit to no avail. *See* DE 7 at 2-3. In fact, Reed's Complaint alleges that, "*[a]t present*, [he is] *still* being denied . . . mental health meds." DE 7 at 2 (emphasis

8

added). This allegation is consistent with various statements Reed made in his original, June 2023 filing with the Northern District of Georgia in which he indicated that there were ongoing issues with his medications. *See* DE 1 at 1-3. For example, Reed said: "These people are not giving me any medication at all, I have lost my mother and it's stressing me out[;]" "I really need your help and support please[;]" "I really need my medication[;]" "I need to be at a facility that treats my mental disorder[;]" "My mother has passed away and it's takeing [sic] a toll on me . . . I need to be somewhere getting the help and proper medication that I need[.]" *Id.* Ultimately, the Northern District of Georgia recognized that Reed was complaining about his "lack of access to mental health medication" and transferred his case to this Court. DE 2.

At a minimum, the foregoing statements raise questions about Reed's medical history, as well as when and how often he communicated with Defendants about the medications in question. Without a clearer picture of Reed's medical condition and his interactions with prison officials regarding the treatment of that condition, the Court cannot determine whether his claims are, in whole or in part, timely. That information is relevant to determine whether Reed is complaining of continuing effects from a singular event that occurred in December 2020—the alleged initial decision to remove him from the prescription medications in question—or whether he is alleging multiple discrete acts of deliberate indifference to his serious medical needs, including some that occurred within one year prior to the filing of his lawsuit. *See Phosy v. Tucker*, No. 1:22-CV-00006, 2023 WL 1816094, at *2-3 (M.D. Tenn. Feb. 8, 2023) (stating that the defendant's "reliance on a hyper-technical reading of Plaintiff's *pro se* Amended Complaint is misplaced" and concluding "that Plaintiff has alleged discrete acts within the limitations period"). In short, it is not clear from the present record whether the alleged conduct places this case in the former or

latter category. Neither party has addressed this question and without briefing on the issue and a more developed record, the Court cannot determine whether Reed's claims are timely.

III.

In light of the foregoing analysis, the Court **ORDERS** as follows:

1. The Court **DENIES** DE 25, Defendants' dispositive motion, **without prejudice** to their right to reassert their arguments on a more developed, post-discovery record.

2. Pursuant to 28 U.S.C. § 636(b), the Court **REFERS** this matter to a United States Magistrate Judge to conduct further pretrial proceedings, including overseeing discovery and setting an efficient schedule for plenary dispositive motions.

3. The Court **DIRECTS** the Clerk's Office to assign this matter to a United States Magistrate Judge by random draw.

This the 11th day of July, 2024.

Signed By:
*Robert E. Wier*
United States District Judge